**NEWMAN | WILLIAMS, P.C.**

BY: GERARD J. GEIGER, ESQUIRE
IDENTIFICATION NO. 44099
LAW OFFICES
712 MONROE STREET
STROUDSBURG, PA 18360-0511
(570) 421-9090 (voice)
(570) 424-9739 (fax)
ggeiger@newmanwilliams.com

Attorney for Defendant: County of Northampton

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEFFERY FEHNEL and AFRDITA KRASNIQI, as h/w, <br> Plaintiffs, <br><br> v. <br><br> COUNTY OF NORTHAMPTON, et al., <br> Defendants | NO. 5:25-cv-04783 <br><br> CIVIL ACTION <br><br> Jury Trial Demanded |

**BRIEF INSUPPORT OF MOTION TO DISMISS COMPLAINT
ON BEHALF OF DEFENDANT, COUNTY OF NORTHAMPTON**

**I.    Procedural History**

On August 20, 2025, a Notice of Removal was filed in this court from plaintiff's lawsuit originally filed in the Northampton County Court of Common Pleas.

Cocurrently with this brief, Northampton County filed a Rule 12(b)(6) motion to dismiss plaintiff's complaint.

**II.    Facts**

This civil action arises from an encounter that occurred on July 29, 2023, in Bangor, Pennsylvania. Plaintiffs Jeffery Fehnel and Afrdita Krasniqi allege that

they were walking in Bangor with their infant child when Mr. Fehnel became involved in an altercation with another person. Plaintiffs assert that officers from the Bangor Police Department and the Washington Township Police Department responded to the scene, including Bangor Police Chief Kevin Jones, Bangor Officer Robert DeLeon, and Washington Township Officer Daniel Dieter.

According to the Complaint, after instructing Plaintiffs to leave the area, police officers pursued them for approximately one block. Plaintiffs allege that officers apprehended Mr. Fehnel, who informed officers he had a pre-existing spinal condition. Officer DeLeon purportedly tased Mr. Fehnel and forced him to the ground at the direction of Chief Jones. Plaintiffs claim that officers then ignored Mr. Fehnel's complaints of back pain.

Plaintiffs further allege that Ms. Krasniqi, who states she was visibly pregnant at the time, attempted to film the arrest. She contends that Officer Dieter forcibly assaulted her in order to prevent her from recording the encounter. Plaintiffs claim both suffered physical and emotional injuries as a result of the officers' conduct.

## Claims Asserted Against Northampton County

Although no Northampton County employees are alleged to have been personally involved in the incident, Plaintiffs assert claims against Northampton County based on theories of municipal liability under 42 U.S.C. § 1983 and state law. Specifically, the Complaint asserts the following claims against the County:

1. **§ 1983 Excessive Force (as to Ms. Krasniqi only)** Plaintiffs assert that Northampton County is liable for alleged use of excessive force by Washington Township Police Department officers.

2. **§ 1983 Failure to Train (as to Ms. Krasniqi only)** Plaintiffs allege that Northampton County failed to train Washington Township police officers regarding use of force and treatment of pregnant individuals.

3. **§ 1983 State-Created Danger (as to Ms. Krasniqi only)** Plaintiffs assert that the County created or increased the risk of harm to Ms. Krasniqi.

4. **§ 1983 Monell Liability (as to Ms. Krasniqi only)** Plaintiffs contend that Northampton County maintained unconstitutional policies or customs related to policing.

5. **State-law Negligence and Battery Claims** Plaintiffs allege Northampton County is vicariously liable for alleged physical contact by Washington Township officers.

6. **Negligent Infliction of Emotional Distress (as to Mr. Fehnel)** Plaintiffs assert a negligent infliction of emotional distress claim against Northampton County.

7. **Loss of Consortium (as to Mr. Fehnel)** Plaintiffs assert a derivative loss-of-consortium claim arising out of the alleged injuries to Ms. Krasniqi.

## Summary

In short, Plaintiffs seek to hold Northampton County liable for the alleged actions of Bangor Borough and Washington Township Police Department personnel, asserting municipal and vicarious liability theories. The Complaint

3

does not identify any Northampton County employee who participated in the
alleged incident, nor does it allege that Northampton County owns, operates,
supervises, or controls the Bangor or Washington Township Police Departments
or their officers. To the contrary, the County files this motion to dismiss because
as a matter of Pennsylvania statutory law, the County has no legal authority to
train or supervise local police departments within the County.

## III.    Issues Presented in the County's Motion

A.    Whether the plaintiffs state a claim against Northampton County
where the County has no statutory or other authority to train /or supervise
Borough and Township police forces within the County?

B.    Whether plaintiffs can state a *Monell* claim against the County
where the County has no legal authority to establish polices for the Bangor and
Washington Township police departments?

C.    Whether Northampton County has immunity under the
Pennsylvania Political Subdivision Tort Claims Act for negligence claims?

## IV.    Argument

### A. Standard of Review

Under the Federal Rules of Civil Procedure, a complaint will be dismissed
upon a motion if it fails "to state a claim upon which relief can be granted." FED.
R. CIV. P. 12(b)(6). To withstand a challenge at the motion-to-dismiss stage, "a
complaint must contain sufficient factual matter, accepted as true, to state a
claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678,

4

129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (internal quotation marks and citation omitted). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

Moreover, though "the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). Put simply, a plaintiff shall make "some showing sufficient to justify moving the case beyond the pleadings to the next stage of litigation." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234-35 (3d Cir. 2008).

In the Third Circuit, a court will deploy a three-step analysis on a motion to dismiss. First, a court will identify "the elements [the] plaintiff must plead to state a claim." *Connelly*, 809 F.3d at 787 (internal quotation marks and citations omitted). Then, the court will "identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. Lastly, a court assumes the veracity of well-pleaded factual allegations, "and then determine whether they plausibly give rise to an entitlement to relief." Id. (quoting Iqbal, 556 U.S. at 679).

For purposes of this analysis, this Court will "accept all factual allegations as true, [and] construe the complaint in the light most favorable to the plaintiff." *Warren Gen. Hosp. v. Amgen, Inc.*, 643 F.3d 77 at 84 (3d Cir. 2011); *Stokes v. Campbell*, No. 5:22-cv-02681-JMG, 2023 U.S. Dist. LEXIS 152022, at *5-6 (E.D. Pa. Aug. 29, 2023) (Gallagher, J.).

### B. The County Has No Legal Authority to Control Municipal Police

Plaintiffs' claims rely entirely on the premise that Northampton County is responsible for the training, supervision, and conduct of Bangor and Washington Township police officers. Pennsylvania law, however, squarely rejects this premise.

The Pennsylvania Borough Code gives the Borough council the authority to establish a police department and control its operation:

> "(a) *Establishment of police department.* — Council may, by ordinance, establish a police department. If council establishes a police department, the following shall apply:
>
> (1) Council may appoint police officers, subject to Subchapter J (relating to civil service for police and fire apparatus operators).
>
> (2) Council may remove, suspend or reduce in rank any police officer:
>
> (i) in accordance with the act of June 15, 1951 (P.L. 586, No. 144), entitled "An act regulating the suspension, removal, furloughing and reinstatement of police officers in boroughs and townships of the first class having police forces of less than three members, and in townships of the second class"; or
>
> (ii) subject to Subchapter J.
>
> (3) Council shall designate the ranks in the police department and the duties of each rank and may designate one of the police officers as chief of police.
>
> (4) Council may assign any member of the police department to attend training classes offered by the Federal or State Government and may pay the police officer's expenses while attending the school.
>
> (5) Council shall determine the total weekly hours of employment that shall apply to the police officers."

8 Pa. Cons. Stat. Ann. § 1121.

The Pennsylvania Township Code similarly vests exclusive authority over

township police in township supervisors. See 53 P.S. § 66902.

Washington Township is a second-class, Pennsylvania township.[1] The

second-class Township Code vests the authority to create and supervise a

township police department in its board of supervisors:

> **"§ 66902. Appointment of police**
>
> The board of supervisors shall provide for the organization and
> supervision and determine the number and the compensation of the
> police officers. The position of police officer is incompatible with
> the office of supervisor, auditor, tax collector and manager. The
> chairman of the board of supervisors may swear in police officers.
> The board of supervisors may assign any police officer to undergo a
> course of training at any training school for police officers
> established or made available by the Federal or State Government
> and provide for payment of the officer's expenses while in
> attendance at the training school."

53 Pa. Stat. Ann. § 66902.

Pennsylvania courts consistently hold that counties have no authority over

municipal police.

For example, in *Salopek v. Alberts*, 417 Pa. 592, 596-97, 209 A.2d 295, 297

(1965), the Pennsylvania Supreme Court noted the authority of a mayor over the

borough police force:

> "... [T]he Borough Code gives the "burgess", now called mayor, "full
> charge and control of the chief of police and the police force" and
> provides "he shall direct the time during which, the place where,
> and the manner in which, the chief of police and the police force
> shall perform their duties." (Borough Code, supra, 53 P.S. § 46125).

---

[1] https://www.washington-township.com/ord/ord189.pdf

> In addition, the Borough Code empowers the borough council, by
> ordinance, to "establish a police department consisting of chief,
> captain, lieutenant, sergeants, or any other classification desired by
> the council, and council may, subject to the civil service provisions
> of [the Borough Code] . . . designate the individuals assigned to
> each office, but the burgess shall continue to direct the manner in
> which the persons assigned  [*597]  to the office shall perform their
> duties." (Borough Code, supra, 53 P.S. § 46125)."

*Salopek v. Alberts,* 417 Pa. 592, 596-97, 209 A.2d 295, 297 (1965)

There is no statute that gives Northampton County legal authority to
supervise these local police departments. Because the County lacks authority to
hire, supervise, train, or discipline officers from Bangor or Washington
Township, Plaintiffs cannot maintain claims premised on such authority.

### C. Plaintiffs Fail to State a Monell Claim

To state a Monell claim, Plaintiffs must allege that the County had a policy
or custom that was the moving force behind a constitutional violation. *Monell v.
Dep't of Soc. Servs.,* 436 U.S. 658, 694 (1978).

Because the County has no legal control over municipal police, it
necessarily cannot have maintained a policy or custom regarding their
supervision or training.

Plaintiffs' formulaic assertions of "policy" and "failure to train" lack factual
support and must be disregarded:

> ...[T]he pleading standard Rule 8 announces does not require
> "detailed factual allegations," but it demands more than an
> unadorned, the-defendant-unlawfully-harmed-me accusation. *Id.*,
> at 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (citing *Papasan* v. *Allain,*
> 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986)). A
> pleading that offers "labels and conclusions" or "a formulaic
> recitation of the elements of a cause of action will not do." 550 U.S.,
> at 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929. Nor does a complaint

8

suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*, at 557, 127 S. Ct. 1955, 167 L. Ed. 2d 929.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009).

### D. State-Law Claims Are Barred by Governmental Immunity

To the extent Plaintiffs assert negligence-based claims against the County, they are barred by the Political Subdivision Tort Claims Act. 42 Pa.C.S. § 8541. None of the statutory exceptions apply to the allegations here. See 42 Pa.C.S. § 8542(b).

## V. CONCLUSION

For the reasons set forth above, all claims against Northampton County must be dismissed with prejudice.

NEWMAN | WILLIAMS, P.C.

By: _____
Gerard J. Geiger, Esq.

Dated: November 7, 2025

**Certificate of Service**

I hereby certify that on this date, a copy of the foregoing document was served on all counsel via ECF.

NEWMAN | WILLIAMS, P.C.

By: _____
Gerard J. Geiger, Esq.

Dated: November 7, 2025